### J. P. DAVIS v. THE STATE.

No. 9543.    Delivered November 25, 1925.

Rehearing denied January 27, 1926.

**1.—Assault to Murder—Evidence—Held, Properly Admitted.**

Where, on a trial for an assault to murder by appellant upon one Gilliland, it was proven by the state that prior to appellant's assault on him, Gilliland had shot at appellant, and as explanatory, that the reason for such shooting was a remark made at the time by appellant to the wife of Gilliland, in which appellant called her "sweetheart." Appellant's objection that this testimony was of an extraneous and disconnected offense, committed by appellant, cannot be concurred in by us, and no error is shown in its admission.

**2.—Same—Evidence—Res Gestae—Properly Admitted.**

Where appellant complains of testimony of his exclamation that he was going to kill Gilliland, made while he was scuffling with parties who caught him, as he pursued and shot Gilliland, and also that witness searched Gilliland a few minutes after the shooting, and did not find upon him any weapon, no error is shown, such testimony being res gestae of the transaction.

**3.—Same—Evidence—Opinion—Properly Excluded.**

Where appellant was asked by his counsel while testifying in his own behalf, "Now at the time you shot him the first time, was he evidencing any intention to carry this threat (a former threat having been shown) into execution?" the objection of the State to the question was properly sustained. We think the question called for an opinion of the witness. It would have been proper to permit him to detail the facts as to what Gilliland was doing at the time of the shooting.

**4.—Same—Evidence—Harmless, if Error.**

Testimony that Gilliland, the assaulted party, ran into a blacksmith shop after being shot by appellant, and asked the proprietor if he had a gun, would seem impossible of any injury to appellant, even if immaterial to any issue in the case, its admission was harmless.

ON REHEARING.

**5.—Same—Evidence—Properly Admitted.**

The shooting at appellant by Gilliland and the cause of such shooting was a proper inquiry on this trial, as presenting the motive of appellant in shooting at Gilliland. The transactions were correlated and were in no sense disconnected or extraneous, but plainly led to and were materially related to the case on trial. Distinguishing Brown v. State, 112 S. W. 80; Vana v. State, 246 S. W. 1034, and Baker v. State, 11 S. W. 676.

Appeal from the District Court of Taylor County. Tried below before the Hon. W. R. Ely, Judge.

Appeal from a conviction of an assault to murder, penalty two years in the penitentiary.

The opinion states the case.

*Stinson, Combs & Brooks,* of Abilene, for appellant.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—From conviction in the District Court of Taylor County of assault to murder, with punishment fixed at two years in the penitentiary, this appeal is taken.

The facts show without dispute that appellant shot a man named Gilliland in Taylor County, Texas. They also show that some time prior to said occurrence, Gilliland had shot at appellant. The State proved the prior shooting apparently as showing motive and as furnishing the basis of ill-will on the part of appellant in the instant occurrence. In developing its proof of said former difficulty the State had Gilliland and his wife to testify that appellant was at their home and used language to Mrs. Gilliland deemed insulting by her and her husband, and that this caused Gilliland to shoot at appellant. The testimony as to the language claimed by the State to have been used by appellant to Mrs. Gilliland on said occasion was objected to and the objection brought here in several bills of exception. We do not think the authorities cited by appellant in support of his objection apply, or that they are analogous. It was claimed by the State that at the time of the first shooting Gilliland overheard appellant address Mrs. Gilliland as sweetheart and that the language was offensive both to her and her hus-

band, and that resentment of same caused the shooting. The objection seems to be largely based on the proposition that this was proof of an extraneous and disconnected offense committed by the appellant. We do not think so. The use of said language violated no law of this State, however objectionable and offensive it may have been to Mr. and Mrs. Gilliland, and we are unable to follow learned counsel for the appellant in their argument and citation of authorities against the acceptance of testimony of other offenses.

We do not perceive the materiality of the testimony complained of in appellant's bill of exceptions No. 2, and in consequence are unable to appraise the validity of the objection made.

Another bill sets forth appellant's objection to proof of the fact that while he was scuffling with parties who caught him as he pursued and shot at Gilliland, he said then that he was going to kill Gilliland. This was manifestly part of the res gestae. There is also complaint that the State was permitted to prove by another witness that he searched Gilliland a few minutes after the shooting and did not find upon him any weapon. The objection was that this was out of the presence and hearing of the appellant. There is nothing in the complaint; and this is true of the matter set out in the bill showing that one of appellant's character witnesses was asked upon cross-examination by the State if he had ever heard of appellant going to Gilliland's house and calling his wife sweetheart.

Appellant testified, and, among other things, stated that a Mrs. Johnson had communicated to him a threat made by Gilliland against his life. Appellant's counsel propounded to him the following query: "Now at the time you shot him the first time was he evidencing any intention to carry that threat into execution that he had made?" Objection to this by the State was sustained. We think the question called for an opinion of the witness and that he could have been asked to detail the facts as to what Gilliland was doing or saying at the time, and if it became manifest that he could not adequately detail the conduct of Gilliland, he might have permitted, after telling so much as he could, to express an opinion. By another bill it is made to appear that the State was allowed to ask appellant while on the witness stand in reference to the former difficulty: "Had you sent anybody to talk to Mr. Gilliland to try and recon-

cile the matter with him?" and to elicit the answer that he had not because they were both strangers and neither had any neighbors they could talk to. We do not think the bill presents any material ground for complaint.

The fact that after being shot by appellant Gilliland ran into a blacksmith shop and asked the proprietor if he had a gun, would seem impossible of any injury to appel-lant, even if immaterial to any issue in the case. The testimony on the whole case is contradictory as to the facts surrounding the transaction, but the matter seems to have been fairly submitted in the charge of the court to which no exceptions were taken, and the jury were within their province in arriving at the conclusion announced in their verdict.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Our statement in the original opinion that "the use of said language violated no law of this State," was only made to meet the contention of appellant that to allow proof of the use of such language, was to allow proof of an extraneous offense. Nothing is legally an "offense' except it offend against some statute. Appellant now urges that it was hurtful to him, and there-fore objectionable, because it was the introduction of evidence of a prior and disconnected contest, controversy and difficulty, and he cites Brown v. State, 112 S. W. Rep. 80; Vana v. State, 246 S. W. Rep. 1034, and Baker v. State, 11 S. W. Rep. 676. None of said cases are analogous on the facts or principles involved. In Baker's case Judge Hurt said no light on a pistol carrying case was afforded by proof of a quarrel and separation of the brother of appellant and his wife, the charging of one or the other with adulterous conduct, etc. In the Vana case Judge Morrow said that proof of vulgar remarks of appellant in the presence of one little girl, and indecent conduct with another little girl, shed no legitimate light on a charge against the accused of fondling the person of a third girl. In Brown's case Judge Davidson said the details of a difficulty had by appellant with Miller, objected to as not having any connec-

tion with the homicide on trial, and whether appellant was right or wrong in his difficulty with Miller, were immaterial, etc., and that it was a safe rule to limit evidence to the case in hand, and exclude evidence of extraneous offenses, contests, controversies and difficulties. Appellant called another man's wife "Sweetheart," and the other man, for that, shot at appellant; who on the instant occasion shot said other man. The conduct and statement of appellant at the time of the first shooting was in no sense disconnected or extraneous, but plainly led up to and was materially related to the case on trial. Appellant testified to threats against him by Gilliland, the injured party, and that on the occasion of the shooting he saw Gilliland on the street and thought he would speak to him, and just as he went to open the door Gilliland made a play for his gun; that the latter threw his hand down by his side here (indicating) to get his gun, and "when he did that, why I shot him. I knew he was going to get a gun. I knew he was going to get it. When I shot he kept trying to get his gun. * * * When I shot at him the second time I thought he was seeking a better position to shoot me. He still had his hand here (indicating) and it seemed like he was trying to pull a gun out. At the time I shot at him, at that time, I thought he was going to shoot me."

In view of all the testimony it would be but a repetition to allow the accused to further state that he thought Gilliland was evidencing an intention to execute a threat previously made, and the action of the court in sustaining the State's objection to such statement would not be material error, if at all.

The motion for rehearing will be overruled.

*Overruled.*