CECIL LOVERN v. THE STATE.

No. 17422. Delivered March 20, 1935.

The opinion states the case.

*J. A. Wheat,* of Seymour, and *Taylor, Muse & Taylor,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft of turkeys; punishment, a fine of seventy-five dollars, and eight days in the county jail.

Two neighbors in Baylor County, Texas, raised turkeys in 1933. W seems to have counted his every day. On Saturday, November 11th, his flock was nineteen short. He hunted the absentees Sunday. Monday he went over to L's where he found a pen full of turkeys. He testified that L refused to let him go in the pen and catch and examine the turkeys; also that he tried to get L to turn them out and see if some of them did not go to W's house, but that L would not do this. W went away but came back with officers, and upon their insistence certain of the turkeys claimed by W were taken from the pen and to a point about half way between the two homes and there turned loose. They went to W's house and to roost there. Buyers who bought the turkeys of both L and W testified there

was an average difference in weight in favor of W's turkeys of three or four pounds each. The father of W, who had special care of the turkeys, identified the nineteen by ragged tails, which he said police dog puppies had made so by chasing the turkeys.

Appellant defended on the ground that some three weeks before November 11th he lost about twenty-five turkeys and was not able to find them; that the turkeys here in question came to his house on said Saturday night and he thought they were his, and knew a buyer was coming the Monday following, so he penned said turkeys on Sunday night thinking them his and expecting to sell them the next day. He testified that he was at all times willing to turn the turkeys out and see where they would go, but was contradicted upon this point by Officers Holmes and McDaniel, and also by W.

There are eleven bills of exception; four of which were to the charge on circumstantial evidence, which exceptions may have led the trial judge to change the charge,—for as same appears in this record it is a correct exposition of the law. This is substantially true of the complaint of the charge on mistake on the part of appellant. The charge on this issue pointedly told the jury that if the testimony raised in their minds a reasonable doubt as to whether appellant knew or believed the turkeys to be his, they should acquit him.

Paragraph eight of the charge given contained all which appears in appellant's special charge No. 1 that is material to a proper presentation to the jury of the law applicable. There was no need to set out in the charge in regard to W and L raising turkeys of the same breed and kind, there seeming to be no dispute on this point, nor of the claim of appellant that he had lost turkeys.

We perceive no error in the refusal of special charges two and three which sought to have the jury told that if the sheriff told appellant that they should take the turkeys halfway between the two places and turn them loose and let the place they went to determine their ownership, and this would settle all controversy and litigation concerning same, or if they had a reasonable doubt thereof,—and that appellant acted on same and relied on same, they should acquit. Nothing appears in the testimony supporting any claim that Mr. McDaniel, sheriff, offered or stated to appellant that if he agreed to turn the turkeys out and let where they would go settle the question of ownership, that this would affect any criminal charge involved. It would appear needless to say that the sheriff would have no

authority to make such agreement, even if he had attempted to do so. No one in this record seems to claim that he did make such offer.

Two bills of exception complain of testimony as to the acts of the turkeys in question when they went to W's premises after being released from appellant's pen. The acts testified about and complained of indicated familiarity with the premises, and testimony thereof was properly admitted.

Another bill was reserved to testimony that when appellant would not let the turkeys out at the request of W, and the latter told appellant he was going to town, that appellant said, according to W's testimony "Yes, that is what you came over here for, was raising hell around," and the admission of the further testimony that when Walsh started off he had his back to appellant and looked around and appellant was coming at him with a piece of pipe, and told him he would beat his head soft with that piece of pipe. We can not say that such acts, conduct and conversations would not have a bearing upon the question of appellant's guilt of the theft of W's turkeys.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*