NO. 07-08-0038-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 10, 2009

_____

BENITO RIVERA, JR., APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-414796; HON. BLAIR CHERRY, PRESIDING

_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

In one issue, appellant Benito Rivera, Jr., contends the evidence is insufficient to sustain his conviction of burglary of a habitation and the resulting enhanced punishment of life confinement in the Institutional Division of the Texas Department of Criminal Justice. Therefore, he argues, it must be reversed. Disagreeing with that contention, we affirm the judgment of the trial court.

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005).

Background

The trial evidence was that on August 27, 2006, between the approximate times of 9:30 a.m. and 2:00 p.m., Ronald Perdue's Lubbock home was burglarized. At that time, Perdue was at a Lubbock hospital caring for his mother. Upon his return home, he noticed that the back door of his house was "kicked in." Entering the residence, he discovered items of personal property, including his guitar, his banjo, their cases, and his mother's stereo were missing. Also missing were a leather jacket, a watch, jewelry belonging to his mother, and one blank check on his business account.

Trial evidence also showed that Perdue's banjo and guitar were pawned at Lubbock pawn shops on August 27 and August 28 respectively. The August 27 pawn ticket showed that that transaction occurred at 12:29 p.m. Both pawn tickets were signed by a "BJ Rivera." Each ticket contained a declaration of the signatory that: "I am the owner of the pledged goods and/or have the right to possess them. Pledged goods are free and clear of any encumbrance, lien or claim."

The managers of the pawn shops averred that before each of them engaged in a transaction, they required proof of identification such as a valid driver's license or a Texas identification card. Perdue later discovered that his missing business check, bearing the date of August 27 and made payable to "Benny Rivera," was forged and presented for payment. On the face of the check was a notation containing a driver's license number and the name "Benny Rivera." The driver's license number shown was the same as that on the two pawn tickets. A handwriting expert testified that the signatures on the pawn tickets and the check were those of appellant.

Appellant's mother, Sofia Rivera, was appellant's only trial witness. She averred that he was living with her at the time in question and that he had broken his ankle "probably the last weeks of July." Treatment of the injury required surgery and the placement of pins and splints on the ankle. During August 2006, she said, appellant could not drive, used crutches, and could not bear any weight on the leg. That being so, she reasoned, he would have been unable to kick in a door. She conceded that she had memory problems, particularly with dates, and she admitted appellant regularly reported for work as a cement mixer after his injury. She also conceded that appellant "told me a lot of stuff, you know, to say in court, but I wasn't going to listen to him."

## Discussion

A person commits burglary if, without the effective consent of the owner, he enters a habitation with the intent to commit theft. Tex. Penal Code Ann. §30.02(a)(1) (Vernon 2003). In reviewing issues of legal insufficiency, an appellate court views the evidence in a light most favorable to the verdict to determine whether a rational fact finder could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). If, based upon all the evidence, a rational jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires we reverse and order an acquittal. *Id.*

In performing a factual sufficiency review, we view all the evidence in a neutral light, giving deference to the fact finder's determination if supported by the record. We may not order a new trial simply because we may disagree with the verdict. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that

3

the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. A criminal verdict will only be set aside "if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met." *Garza v. State*, 213 S.W.3d 338, 344 (Tex. Crim. App. 2007).

Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Roberson v. State*, 16 S.W.3d 156, 164 (Tex. App.–Austin 2000, pet. ref'd). In this case, because appellant is not linked to the crime by direct evidence, it is our task to determine if the State's circumstantial evidence was sufficient to establish appellant's guilt. *See Sutherlin v. State*, 682 S.W.2d 546, 548 (Tex. Crim. App. 1984).

A person's unexplained possession of recently stolen property permits an inference that the defendant is the person who committed the burglary. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). However, to warrant an inference of guilt based solely on the possession of stolen property, the possession must be personal, recent, unexplained, and involve a distinct and conscious assertion of right to the property by the defendant. *Sutherlin v. State*, 682 S.W.2d at 549. If the defendant offers an explanation for his possession of the stolen property, the record must demonstrate the account is false or unreasonable. *See Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a defendant's explanation for possession of recently stolen property is true or reasonable is a question of fact to be resolved by the trier of fact. *Dixon v. State*, 43

4

S.W.3d 548, 552 (Tex. App.–Texarkana 2001, no pet.). Generally, the shorter the time between the theft and the possession, the stronger the inference, although the cases will vary according to such factors as the ease with which such property can be transferred. *Jackson v. State,* 12 S.W.3d 836, 839 (Tex. App.–Waco 2000, pet. ref'd),*citing Hardage v. State,* 552 S.W.2d 837 (Tex. Crim. App. 1977).

Here, it is not disputed that appellant signed the pawn tickets of August 27 and 28 pawning Perdue's property and receiving cash. Additionally, appellant did not counter the evidence that he forged Perdue's business check. As we understand it, as an explanation for his possession of recently stolen property, appellant argues that because his ankle injury made it impossible for him to "kick in" a door, someone else must have committed the burglary and delivered the property to him.

As we have noted, appellant's only evidence of this explanation was the testimony of his mother, Sofia, with whom he lived in the summer of 2006. Sofia did indeed opine that because of his ankle injury, he could not have kicked in the door. However, as we have noted, she also admitted that she had memory problems, particularly with dates, and she admitted that appellant had suggested testimony to her. Other than his mother's testimony, there was no evidence that appellant was physically incapable of making a forced entry to Perdue's residence. Appellant also argues that because he was a patron of the two pawn shops, had knowledge of their identification procedures, and did not act suspiciously during the transactions, his behavior indicated a lack of guilt.

We disagree that the evidence was insufficient to support the jury's verdict. Initially, appellant's claim that he received the property from an undisclosed third party would require the jury to first accept appellant's mother's testimony that her son was physically

5

incapable of gaining entrance to the Perdue house. In assessing the validity of this conclusion, the jury could have considered the fact that there was no other evidence of appellant's claimed physical limitations at the time of the burglary and that appellant's mother admitted that she had a poor memory, especially as to dates, and that appellant had suggested other testimony for her which she refused to provide. Moreover, appellant's contention that he did not act suspiciously in the pawn transaction and must, therefore, have innocently possessed the property, not only does not have evidentiary support, but was substantially under cut by the undisputed evidence that he possessed, forged, and presented a check stolen from Perdue. There was also evidence that on the day of the burglary, he possessed and pawned a banjo stolen from Perdue, as well as evidence that on the day after the burglary, appellant pawned a stolen guitar. The evidence was undisputed that appellant did not have permission to enter Perdue's residence and take possession of these items.

In sum, the evidence was amply sufficient to support the jury's verdict. Accordingly, appellant's issue does not demonstrate reversible error. We must, and do hereby, overrule the issue and affirm the judgment of the trial court.


John T. Boyd
Senior Justice

Do not publish.

6